Steven **DOMENIKOS**, George Domenikos, Robin Hurd and Sasha Epstein, Plaintiffs–Appellants,

v.

John Andrew **ROTH**, Clarence Chandran, Frank Dunn and Nortel Networks Corporation, Defendants–Appellees.

No. 07–0406–cv.

United States Court of Appeals, Second Circuit.

June 5, 2008.

Steven J. Toll (Joshua S. Devore, Jason M. Leviton, on the brief), Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC., for Appellants.

Marc D. Ashley (Stuart J. Baskin, Tai H. Park, Parthapratim Chanda, Alicia A. Ellis, on the brief), Sherman & Sterling LLP, New York, NY, for Defendants–Appellees John Andrew Roth, Clarence Chandran, and Nortel Networks Corporation.

James R. Stovall (Richard F. Albert, on the brief), Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., New York, NY, for Defendant–Appellee Frank Dunn.

PRESENT: JOSÉ A. CABRANES, ROBERT A. KATZMANN, and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

Plaintiffs–Appellants Steven Domenikos, George Domenikos, Robin Hurd, and Sasha Epstein ("plaintiffs") brought this action against John Andrew Roth, Clarence Chandran, Frank Dunn, and Nortel Networks ("defendants") for fraud in violation of federal securities law and Massachusetts state law. Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the District Court granted that motion on the ground that plaintiffs' claims were time-barred, and plaintiffs filed this appeal from the District Court's judgment. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

Plaintiffs urge the vacatur of the District Court's judgment because (1) they were not on "inquiry notice" of the fraud claims in February 2001; (2) the five-year statute of limitations established by the Sarbanes–Oxley Act, and not the one-year limitations period imposed by the District Court, governs this claim; and (3) their state-law claims were improperly dismissed. We disagree on the first two counts, but agree on the third.

First, we, like the District Court, conclude that plaintiffs were on inquiry notice of the alleged fraud in February 2001. "Inquiry notice—often called 'storm warnings' in the securities context—gives rise to a duty of inquiry 'when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded.'" *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168 (2d Cir.2005) (quoting *Levitt v. Bear*

*Stearns & Co., Inc.,* 340 F.3d 94, 101 (2d Cir.2003)). "Storm warnings in the form of company-specific information probative of fraud will trigger a duty to investigate." *Id.* at 169. If inquiry notice is established and the investor fails to conduct an inquiry, knowledge of the fraud is imputed as of the date he received inquiry notice. *Id.* at 168. Here, a class action complaint filed in February 2001—in the wake of a substantial decline in Nortel's stock price that received extensive media coverage—alleged that Nortel had materially misstated its financial results for the third and fourth quarters of 2000.

Plaintiffs contend that these allegations did not alert them to the accounting fraud giving rise to their action because they acquired Nortel shares prior to the third quarter of 2000 and therefore had no cause to fear that they had been the victims of the fraud charged in the class-action complaint. We disagree. The class-action allegations, while pertaining explicitly only to financial reporting for the second half of 2000, would have alerted an investor of ordinary intelligence that financial statements issued earlier in 2000 and in 1999 may have suffered from the same infirmities. As such, these allegations constituted "company-specific information probative of fraud" that "trigger[ed] a duty to investigate." *Lentell,* 396 F.3d at 169.

Plaintiffs next argue that they had no inquiry notice in 2001 because they could not have brought an action for securities fraud at that time. This argument conflates inquiry notice with actual notice. It may be true that plaintiffs could not have brought a viable securities-fraud action in 2001, but inquiry notice does not require them to do so. Inquiry notice imposes only a duty of inquiry. Plaintiffs do not allege, however, that they conducted any inquiry whatsoever, and where an "investor makes no inquiry once the duty arises, knowledge will be imputed as of the date

the duty arose." *Lentell,* 396 F.3d at 168 (internal quotation marks omitted). Accordingly, as the District Court held, plaintiffs had constructive knowledge of the fraud in February 2001.

■ Second, plaintiffs maintain that their action was governed by the five-year statute of limitations set forth in section 804(b) of the Sarbanes–Oxley Act ("SOX"), and not the one-year limitations period established by 15 U.S.C. § 78i(e). Prior to the passage of SOX, "[t]he statute of limitations for claims pursuant to section 10(b) of the Securities Exchange Act and SEC Rule 10b–5 [was] 'within one year after the discovery of the facts constituting the violation and within three years after such violation.' " *Newman v. Warnaco Group, Inc.,* 335 F.3d 187, 193 (2d Cir.2003) (quoting 15 U.S.C. § 78i(e) (2000)). Section 804(b) of SOX extended the limitations period for securities fraud actions to the lesser of two years from discovery of the fraud or five years from the date of the fraud. *See* 28 U.S.C. § 1658. In *Shah v. Meeker,* we explained that SOX "extended the limitations period to two years, but applies only to fraud claims arising on or after the effective date of the Act—July 30, 2002—and does not revive claims that were already time-barred under the prior one-year limitations period." 435 F.3d 244, 249 (2d Cir.2006) (citing *In re Enter. Mortg. Acceptance Co., LLC Sec. Litig.,* 391 F.3d 401, 411 (2d Cir.2004)). In light of *Shah* and *Enterprise Mortgage,* plaintiffs cannot avail themselves of the statute of limitations established by SOX. The alleged fraud at issue in this action occurred in June (or September) 2000 and plaintiffs had constructive knowledge of the fraud—due to their failure to carry out an investigation after having received inquiry notice—in February 2001. Pursuant to 15 U.S.C. § 78i(e), their claim was time-barred as of February 2002, five months

before SOX was enacted. Because SOX "does not revive claims that were already time-barred under the prior one-year limitations period," *Shah,* 435 F.3d at 249, plaintiffs are bound by the one year statute of limitations. Accordingly, plaintiffs' federal securities claims are untimely. The applicable statute of limitations expired in February 2002 and this action was filed three years later on February 14, 2005.

Third, plaintiffs urge that, regardless of the viability of their federal securities claims, the District Court had independent jurisdiction over the state-law claims—arising from diversity of citizenship—and the District Court erred by dismissing them. We agree insofar as the District Court's Order and Opinion of January 26, 2007 did not provide any basis for its dismissal of the state-law claims. Defendants urge several grounds on which the state-law claims could be dismissed, and defendant Roth contends that he is not subject to the personal jurisdiction of New York Courts. The District Court, however, has not yet ruled on any of these arguments, and "[i]t is this Court's usual practice to allow the district court to address arguments in the first instance." *Dardana Ltd. v. A.O. Yuganskneftegaz,* 317 F.3d 202, 208 (2d Cir.2003). For that reason, we vacate the District Court's dismissal of plaintiffs' state-law claims and remand the case for further proceedings.

Accordingly, we AFFIRM the District Court's judgment dismissing plaintiffs' federal securities fraud claims, VACATE the judgment insofar as it dismissed plaintiffs' state-law claims, and REMAND the action to the District Court for further proceedings consistent with this order.